## WATSON v. GUGINO.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1910.)

PARTNERSHIP (§ 105*)—CONTRACT—WITHDRAWAL FROM BUSINESS.

Defendant, who was experienced in the manufacture of macaroni, induced plaintiff to purchase the interest of defendant's brother in their macaroni business, and enter the partnership under an agreement that defendant should devote his whole time to the business of a corporation to be formed to take over the partnership business, and also providing that, if anything should necessitate defendant's giving up the business,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

he would provide a person fully as competent as he was, acceptable to plaintiff, to take his place. The corporation was organized and continued auspiciously until within a few months thereafter when defendant, on the pretense of illness, left the business in charge of his brother, and commenced the erection of a large competing plant, and reduced the price of macaroni so that the business of the original corporation entirely failed. *Held*, that an action against defendant for plaintiff's damages sustained was not an action by one stockholder against another to recover for corporate losses, but was for breach of the partnership agreement which contemplated the continuance of the business for a considerable time, and that the facts established a prima facie case.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 168; Dec. Dig. § 105.*]

Appeal from Trial Term, Erie County.

Action by Henry W. Watson against Carmelo Gugino. From a judgment for defendant dismissing the complaint at the close of plaintiff's case, and from an order of dismissal, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

William G. Crosby, for appellant.
Gordon F. Matthews, for respondent.

SPRING, J. The action is to recover damages for breach of contract. The defendant was experienced in the business of manufacturing macaroni, and with his brother Natale had been profitably carrying on that business in the city of Buffalo. The brother professed a desire to return to Italy, his native country, and at the request of the defendant in October, 1904, the plaintiff purchased the interest of Natale in the business, paying him therefor $3,400. Shortly thereafter the plaintiff and the defendant entered into a written copartnership agreement which was intended to be and was in fact preliminary to the organization of a corporation in lieu of the copartnership. By the agreement the entire business was to be transferred to the corporation and which was to consist of a capital stock of $10,000, divided into shares of $100 each, and in addition to the property of the firm the defendant was to contribute $800 and the plaintiff $400 to the capital stock. Of the 100 shares of stock, the defendant was to hold 65 shares, his father, Antonio, 1 share, and the plaintiff 1 share, and his brother Hiram 33 shares, which were held as collateral security for a debt of the plaintiff and which were transferred to the plaintiff before the commencement of this action. The defendant was to be the president and manager of the corporation, and the plaintiff its secretary and treasurer. The defendant agreed "to devote his whole time and attention to the said corporation business," and the compensation of the officers was fixed by the agreement. The agreement also contained this provision:

"Carmelo Gugino further agrees that if by reason of illness or other cause of which said Carmelo Gugino does not now know of, which would *necessitate* his giving up business, said Carmelo Gugino agrees to provide a person fully as competent as he is, and who is acceptable to said Henry W. Watson, to take his place."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A corporation was duly organized on October 26, 1904, designated the Gugino Macaroni Company. Officers were elected, the capital stock paid in and the certificates of stock issued and distributed, all in conformity to the agreement, and the business started auspiciously on the Terrace in the city of Buffalo, and so continued for a time. The defendant was the master spirit in the management and conduct of the corporate affairs, and such was the expectation when the co-partnership agreement was entered into and the corporation organized. The defendant was not alone familiar with the manufacturing of macaroni, but also understood the trade, could speak both the Italian and English languages fluently, and was well equipped by long experience to make the business a success, and that fact was the chief inducement for plaintiff's enlistment in the enterprise as he was not at all familiar with the business. About two weeks after the business started the defendant was urgent that his brother Natale be employed in the business, and later transferred to him a number of his certificates of stock. In the month of March the defendant on the pretense that he was ill left the business temporarily, as it was assumed, and Natale took charge. The defendant never returned to the factory, and shortly after he commenced the erection of a large plant for the manufacture of macaroni in close proximity to the factory of the corporation in which they were already interested. From that time on the defendant apparently gave no attention to the business of the existing corporation. He assured the plaintiff that the business of the new factory would be in the extensive wholesaling of the product, and would not interfere with the sales of the corporation which the parties had organized. The new plant was completed and the manufacture of macaroni commenced in July, 1906, on an enlarged scale. The corporation had been receiving uniformly 3½ cents a pound for its production, and the new concern promptly reduced the price to 3 cents a pound. With greater sales, a larger plant, more extensive machinery, and above all by reason of the skilled supervision and management of the defendant the new industry captured the trade, and the business of the existing corporation rapidly fell off. It was unable to pay expenses, and in November closed out entirely. Little was realized from the assets on hand, and the greater part of the investment made by the plaintiff was lost, and, as the jury might have found, by reason of the defendant's failure to perform his part of the copartnership agreement.

It is claimed by the defendant that the action is by one stockholder against another to recover for corporate losses. I do not so understand the nature of the action. It is based upon the written agreement which fixed the rights of the parties. The formation of the corporation was a mere incident—a medium—for making effective their agreement. The organization of the corporation did not terminate the written agreement nor absolve either party from complying with its terms. The plaintiff purchased the stock of Natale and became a copartner because he relied upon the sagacity and experience of the defendant, and because he expected that the articles of copartnership between them would be fairly carried out.

By his contract the defendant agreed to devote "his whole time and attention to the said corporation business." Also, if "illness or other cause of which said Carmelo Gugino does not know of, which would *necessitate* his giving up business," another competent man acceptable to the plaintiff was to take the place of the defendant. The defendant did not devote his whole time to the business. That stipulation was one of the chief factors to the success of the project and when the plaintiff, a tyro in it, purchased his interest he relied upon the defendant's fidelity to the affairs of the corporation. There was no reasonable cause which necessitated the defendant's giving up the business, and he did not give up business altogether. The jury may have found that the course adopted by the defendant was in his mind from the inception of the copartnership. He wholly abandoned the project without apparent excuse or justification. He started a new business which inevitably must annihilate the corporation, and then endeavored to induce the plaintiff to join in that enterprise and subscribe for $10,000 of stock at par. All these facts would have been significant in enabling the jury to determine whether the defendant violated the terms of the agreement. The provision by which if the defendant was obliged to give up business by reason of ill health, or similar cause, and in the event of which he was to employ another competent man, related to business generally. That is, the illness or other cause must have been sufficient to require him to abandon business entirely, and there is no pretense that he did anything of that kind.

It is contended that no time for the running of the corporation was provided for, and, consequently, the defendant could abandon the business at his election. It is a fair interpretation of the contract that the parties contemplated the corporation would continue for a considerable time. The plaintiff did not anticipate that the business with $10,000 invested in it and operating profitably would be abandoned in a year or two. Nor was it within the reasonable construction of the defendant's agreement to devote his time and attention to the business, that within six months he should practically withdraw from any active participation in it. These facts and the defendant's conduct, unexplained, were proper for the jury to consider in order to ascertain whether the agreement was broken by the defendant to the damage of the plaintiff.

The rule invoked by the defendant that the plaintiff cannot maintain the action because he is suing a stockholder of the corporation has no application. He is not seeking to have money paid into the corporation or to sustain the life of that body. It is a defunct organization, but the agreement in which the obligations of one party to the other are defined still subsists. That instrument may be considered in connection with the corporation and its business. The parties so intended, and the damages sustained by its breach are personal to the plaintiff. The parties to the action are the only parties to the contract, and it was a live instrument all the time.

The defendant now claims his brother was fully as competent as he to manage the business and was acceptable to the plaintiff. The latter testified otherwise, and his evidence is not controverted.

It is also urged that the plaintiff only owned 1 share of the capital stock and his damages in any event would be trifling. The certificates of stock were held by the brother of the plaintiff as collateral security. The plaintiff was the real owner of the stock. He was the secretary and treasurer and active in the business of the corporation. The defendant understood the reason for the issuance of the stock to Hiram Watson instead of the plaintiff.

Possibly the defendant may be able to give a satisfactory explanation of his conduct, but a prima facie case was made out.

The judgment should be reversed.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.